```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND


DONNA GRAY o/b/o DYLAN GRAY,      :
        Plaintiff,                :
                                  :
     v.                           :    CA 05-354 M
                                  :
MICHAEL J. ASTRUE,¹               :
COMMISSIONER,                     :
SOCIAL SECURITY ADMINISTRATION,   :
        Defendant.                :
```

**MEMORANDUM AND ORDER**

This is an action for judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the decision of the Commissioner of Social Security ("the Commissioner"), denying supplemental security income benefits ("SSI"), under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383(f). Plaintiff Donna Gray ("Plaintiff"), on behalf of her son Dylan ("Dylan," "the child," or "claimant"), has filed a motion to reverse the Commissioner's decision or, in the alternative, to remand. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons set forth herein, I find that the Commissioner's decision that Dylan is not disabled is supported by substantial evidence in the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Astrue is hereby substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

record and is legally correct.  Accordingly, based on the following analysis, I order that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #10) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse and/or to Remand (Doc. #8) ("Motion to Remand") be denied.

## Procedural History

Plaintiff filed an application for SSI on June 12, 2002, (Record ("R.") at 15, 87-89, 111),[2] claiming that Dylan had been disabled since January 1, 1999, due to Attention Deficit Hyperactivity Disorder ("ADHD"), impulsive behavior, and asthma, (R. at 16, 91).  The application was denied initially and on reconsideration, and a request for a hearing before an administrative law judge ("ALJ") was timely filed.  (R. at 15, 57, 59, 60-63, 67, 68-71, 72)  A hearing was held on July 2, 2004, at which Plaintiff and claimant, represented by counsel, appeared and Plaintiff testified.  (R. at 15, 24-56)  On October 14, 2004, the ALJ issued a written decision wherein he concluded that Dylan was not under a disability as defined in the Act, and, accordingly, was not eligible to receive SSI.  (R. at 15-23) Plaintiff requested review by the Appeals Council, which on June 16, 2005, denied her request, thereby rendering the ALJ's decision the final decision of the Commissioner.  (R. at 5-7, 10-11)

On August 18, 2005, Plaintiff filed a Complaint (Doc. #1) in this Court, challenging the denial of benefits and requesting that the Court reverse the decision of the Commissioner and order that Plaintiff be awarded SSI or, in the alternative, remand the matter for application of the correct legal standard or for the taking of additional evidence.  See Complaint at 1-3.  The case was referred to this Magistrate Judge on December 9, 2005, see Order of Reference (Doc. #3), and on December 16, 2005, Defendant's Answer (Doc. #4) was

---

[2] The June 12, 2002, date is a protective filing date.  (R. at 111)  Plaintiff filed another application on June 25, 2002, and changed the alleged onset date to January 1, 1997.  (R. at 83-86) However, regardless of the alleged onset date, a claimant cannot receive SSI benefits for the time prior to the application.  See 42 U.S.C. § 1382(c)(7); 20 C.F.R. §§ 416.330, 416.335; see also (R. at 111)(recommending onset date of 6/1/02 based on SSI application date).

filed.  The Motion to Remand (Doc. #8) was filed on May 1, 2006, and on June 2, 2006, Defendant filed the Motion to Affirm (Doc. #10).

### Issue

The issue for determination is whether there is substantial evidence in the record to support the decision of the Commissioner that Dylan was not disabled within the meaning of the Act.

### Background

The record at the time of the hearing before the ALJ included various school records, reports summarizing the results of various evaluations, and medical records.  In addition, the record contained assessments by non-examining Disability Determination Services ("DDS") experts.

At the time of the hearing before the ALJ in July of 2004, Dylan was nine years old and had completed the third grade.  (R. at 16)  He had never stayed back.  (R. at 31)  All of his classes were regular education classes.  (R. at 16, 29, 131-32)

According to the ALJ's summary of the early evidence, Dylan was born six and a half weeks prematurely and spent several days in an incubator due to breathing problems.  (R. at 17)  Reportedly, developmental milestones occurred as expected.  (Id.)  Behavioral concerns emerged early and were difficult to handle, and Dylan was seen in early intervention.  (R. at 17)  Plaintiff testified that she had "had behavioral problems with him since he was 2," (R. at 31), and that he had "been in therapy since he was 4 years old with ADHD," (id.).  Dylan has consistently been diagnosed with ADHD, (R. at 152, 174, 189, 197, 214, 222, 225, 250, 256, 263), and at various times with Oppositional Defiant Disorder ("ODD"), (R. at 187, 234, 250), anxiety disorder (not otherwise specified), (R. at 189), adjustment disorder with anxiety, (R. at 197, 214), bipolar disorder, (R. at 241, 256), and a mood disorder (not otherwise specified), (R. at 263).[3]

### Law Governing Childhood Disability Claims

---

[3] It was also noted that Dylan may have concurrent separation anxiety, (R. at 152), or a parent-child relationship problem, (R. at 151-52, 182).

3

Under the current standard for defining childhood disabilities under the Act:

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906 (2006).

> In evaluating a child's application for SSI benefits, an ALJ must engage in a three-part inquiry and determine whether: (1) the child is engaged in substantial gainful activity; (2) the child has an impairment or combination of impairments that is severe; and (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of the regulations. 20 C.F.R. §§ 416.924(b)-(d). If, at the third step of the analysis, the ALJ determines that the child's impairment does not meet or equal a listed impairment, the ALJ must then consider whether the child's impairment is equivalent in severity to that of a listed impairment (i.e., whether it "results in limitations that functionally equal the listings"). 20 C.F.R. § 416.926a(a).

Orben v. Barnhart, 208 F.Supp.2d 107, 109 (D.N.H. 2002).

> Functional equivalency means that the impairment is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain ...." 20 C.F.R. § 416.926a(a). A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i).[4] The ALJ

---

[4] Section 416.926a(e)(2) provides, in relevant part, that:

(i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

4

>   considers how a child functions in his activities "in terms of six domains:" "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1). The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of "listing-level severity," that is, an "extreme" limitation in one of these domains, or "marked" limitations in two or more domains. 20 C.F.R. § 416.926a(a).

Encarnacion v. Barnhart, 331 F.3d 78, 84-85 (2nd Cir. 2003) (footnote omitted).

### ALJ's Decision

At the first step of the inquiry, the ALJ noted that Dylan had been born on March 26, 1995, and that he had never engaged in substantial gainful activity. (R. at 16, 22) At the second step, the ALJ found that Dylan has ADHD as well as trouble staying focused and sitting still, which were "severe" within the meaning of 20 C.F.R. § 416.924(c), (R. at 16, 22), because he had "more than slight abnormalities and more than minimal functional limitations," (R. at 16). At the third step, the ALJ found that Dylan's impairments did not meet or equal in severity the requirements of any listed impairment. (R. at 18, 22) The ALJ then proceeded to a determination

---

20 C.F.R. § 416.926a(e)(2)(i) (2006). An "extreme" limitation is found

>   when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

5

of whether Dylan's impairments functionally equaled a listed impairment. (R. at 18) He examined Dylan's performance in the six domains of functioning, (R. at 18-21), and found that he did not have an "extreme" limitation in any of them or a "marked" limitation in two of them, (R. at 21, 22). In fact, the ALJ concluded that Dylan did not have a marked limitation in any domain of functioning, finding no limitations in four of the six domains, (R. at 19-21), and "less than marked" limitations in the domains of Attending and Completing Tasks and Moving About and Manipulating Objects, (R. at 19-20).

### Standard of Review

Pursuant to the statute governing review, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Nevertheless, judicial review of the Commissioner's decision is limited in scope.

The court does not undertake a de novo review of the Commissioner's factual findings, nor does it re-weigh the evidence. See Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3rd Cir. 1986). The decision "will be overturned only if it is not supported by substantial evidence,[5] or if it is based on legal error." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). If the Commissioner's decision is supported by substantial evidence in the record, it must be upheld regardless of whether reasonable minds could differ as to the outcome. See 42 U.S.C. § 405(g); Irlanda Ortiz

---

[5] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)) (internal quotation marks omitted). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026 (1966).

v. Sec'y of Health & Human Servs., 955 F.2d 765, 769-70 (1st Cir. 1991).

### Errors Claimed

Plaintiff argues that the ALJ erred as a matter of law in not obtaining an updated medical expert opinion as to whether claimant's condition met or equaled the requirements of the listings.  See Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Plaintiff's Mem.") at 17.  Plaintiff also appears to allege that the ALJ's determination that Dylan does not suffer from a marked impairment in the domain of Attending and Completing Tasks is not supported by substantial evidence.  See Plaintiff's Mem. at 18.

### Discussion

The ALJ found that:

> Because the child does not have [an] impairment or combination of impairments, which meets, medically equals any listing, or functionally equals any listing, the undersigned concludes the child is not "disabled" for purposes of eligibility for Supplemental Security Income payments.  Great weight has been given to the fact that the claimant is in regular education classes and not receiving special education services.  Dr. Smith's notes reflect that the claimant was doing OK at school academically and that the increased aggressive behavior was directed toward family members.  There was some improvement with risperdal, but some several [sic] breakthrough episodes of conduct problems such as going off without permission, punching his mother an[]d riding his bike in unsafe areas.  While there is evidence of two psychiatric hospitalizations, the record does not show that the claimant's mental impairments will continue to be severe.  It appears that the symptoms improved following hospitalization.  School records also reflect 18 absences for school year 2003-2004 and 19 late arrivals.  Those attendance related problems for a nine year old child cannot be attributed to his medically determinable impairments.  Obviously, that degree of absenteeism will adversely affect academic success.  The assessment of the state agency physician has been accepted and given great weight.[6]

---

[6] Ann M. Frank, Psy.D., and Susan Diaz Killenberg, M.D., reviewed the record and submitted forms on November 19, 2002, and May 16, 2003, respectively.  (R. at 197-203, 214-20)  Both found Dylan to have "less than marked" limitations or no limitations in the six domains.  (R. at 199-200, 216, 218)

(R. at 21)(internal citations omitted).  Plaintiff argues that "[a]ccording to Social Security Ruling 96-6p, the ALJ should obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any impairment in the Listing of Impairments," Plaintiff's Mem. at 17, and that, therefore, "the ALJ erred in not obtaining an updated medical opinion from a medical expert given all of the new medical evidence added to the record pertaining to Dylan's ADHD," id.

Social Security Ruling ("SSR") 96-6p provides that:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>     * When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>     * When additional medical evidence is received that **in the opinion of the administrative law judge** or the Appeals Council **may change the State agency medical or psychological consultant's finding** that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180 (S.S.A.), at *3-4 (footnote omitted) (bold added).  Thus, the decision whether to obtain an updated medical opinion from a medical expert when additional medical evidence is received, as was the case here, is left to the ALJ's discretion.  See id.; see also Field v. Barnhart, No. 05-100-P-S, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006)("Read in context, this language provides little (if any) foothold for court intervention.").  As was recently noted by U.S. Magistrate Judge Cohen in Field v. Barnhart:

> The administrative law judge was required by SSR 96-6p to obtain additional consultation only if, in his opinion, either of the two above-described circumstances obtained.  In his opinion, neither did.  That seemingly is the end of the matter.  See, e.g., U'Ren v. Apfel, No. 99-35604, 2000 WL 1770631, at *2 (9th Cir. Dec. 1, 2000)(noting that SSR 96-6p "specifies only two *discretionary* circumstances when an ALJ should obtain an updated opinion on equivalence from a medical

> expert;" once [the] administrative law judge concluded that newly submitted evidence was unpersuasive, "he had no obligation to call in another state medical expert to review that evidence")(emphasis in original); <u>Cordovi v. Barnhart</u>, No. Civ.A. 04-3742, 2005 WL 3441222, at *3 (E.D. Pa. Dec. 14, 2005)(noting that pursuant to SSR 96-6p, "[a]n ALJ may, but is not required to[,] obtain expert opinions regarding whether an impairment meets or equals a listing.").

2006 WL 549305, at *3 (second and third alterations in original).

The "significant new evidence which was added to the record after this case was last reviewed by a State agency medical consultant," Plaintiff's Mem. at 19, which Plaintiff references consists of the opinion of the Dylan's treating psychiatrist, <u>id.</u> at 18-19, a functional assessment and report card completed by Dylan's third grade teacher, <u>see id.</u> at 18, and records from Dylan's two psychiatric hospitalizations, <u>see id.</u>  However, as is apparent from the portion of the ALJ's opinion quoted above, the ALJ reviewed Dr. Smith's notes, the records for the 2003-2004 school year, and the evidence from the two psychiatric hospitalizations. (R. at 21)  The ALJ concluded, as he was entitled to do, that this evidence would not change the State agency medical or psychological consultant's finding that Dylan's impairment(s) did not equal in severity any impairment in the Listing of impairments. <u>See</u> SSR 96-6p, 1996 WL 374180, at *3-4; <u>cf.</u> <u>Field v. Barnhart</u>, 2006 WL 549305, at *4 ("While reasonable people could disagree, the administrative law judge supportably could have concluded that 'the symptoms, signs, and laboratory findings reported in the case record' did not 'suggest that a judgment of equivalence may be reasonable.'  He accordingly had no duty to convene a supplemental hearing to take testimony from a medical expert on the matter.")(internal citation omitted); <u>Lewis v. Barnhart</u>, No. 05-3-B-W, 2005 WL 1923514, at *3 (D. Me. Aug. 9, 2005)(finding that plaintiff had not shown "which symptoms, signs and/or laboratory findings in the record ... so clearly suggested that a judgment of equivalence was required that the administrative law judge abused his discretion in failing to consult a medical expert").  Based on the foregoing, the Court concludes that the ALJ did not abuse his discretion in declining to consult a medical expert regarding the newly submitted evidence.

9

Turning to Plaintiff's apparent contention that the ALJ's finding that Dylan does not suffer from a marked impairment in the domain of Attending and Completing tasks is not supported by substantial evidence, see Plaintiff's Mem. at 18, the ALJ stated that:

> In this domain, the child has less than "marked" limitations. The claimant has been diagnosed with ADHD and Separation Anxiety disorder. Previously the claimant was treated with psycho stimulants. Mother reports he has trouble staying focused, sitting still and that he is very hyperactive. Dr. Parsons indicated the claimant's work tempo was fast and impulsive, that he was distractible, but was easy to re-focus.

(R. at 20) Overall, with respect to functional equivalence, the ALJ found that "[b]ecause the child does not have an 'extreme' limitation in one area of functioning or a 'marked' limitation in two areas, the child does not functionally equal, singly or in combination, any listed impairment." (R. at 21) Plaintiff disputes this determination, see Plaintiff's Mem. at 18-19, but appears to challenge directly only the ALJ's finding in the domain of Attending and Completing Tasks, see id.[7] In addition to citing Dr. Smith's finding of "marked problems attending and completing tasks," Plaintiff's Mem. at 18, Plaintiff notes that:

> [T]he record clearly documents that Dylan has longstanding problems with attending and completing tasks. Additionally, in a functional assessment completed by Dylan's third grade teacher, Ms. Zukauskas clearly identified problems with attending and completing tasks as a significant limitation for Dylan both in two functional assessments and on his report card which documents unsatisfactory performance in most of his work habits.

---

[7] Plaintiff states that she "does not allege an impairment in the domain of Acquiring and Using Information." Plaintiff's Mem. at 18 With regard to domains other than Acquiring and Using Information and Attending and Completing Tasks, Plaintiff observes only that "the majority of the ALJ's evaluation of the domains of functioning is simply boilerplate language." Id. However, the ALJ, after summarizing the evidence of record, (R. at 17-18), made specific findings in each domain, (R. at 19-21). Plaintiff makes no arguments regarding those findings. See Plaintiff's Mem. at 18-19.

Plaintiff's Mem. at 18 (internal citations omitted).

Even if the Court were to accept Plaintiff's argument that the ALJ's finding of "less than 'marked' limitations," (R. at 19), is not supported by substantial evidence in the record[8] and that the ALJ should have adopted Dr. Smith's finding of a "marked" limitation in this domain, (R. at 257), in order to functionally equal a listed impairment, a child's impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain ...." 20 C.F.R. § 416.926a(a); see also Encarnacion v. Barnhart, 331 F.3d 78, 84-85 (2nd Cir. 2003)("The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of 'listing-level severity,' that is, an 'extreme' limitation in one of these domains, or 'marked' limitations in two or more domains.")(quoting 20 C.F.R. § 416.926a(a)). As noted previously, Plaintiff does not allege that Dylan is impaired in the domain of Acquiring and Using information and makes no argument regarding the remaining domains. See Plaintiff's Mem. at 18-19; see also n.7; cf. Willhauck v. Halpin, 953 F.2d 689, 700 (noting "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived .... It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work ....").

While the Court recognizes that Dr. Smith also indicated that Dylan has "marked" or "extreme" limitations in the domain of Caring for Yourself, (R. at 259), noting "significant impulse control problems, disrespect, unsafe at times," (id.), no other source who assessed Dylan's limitations in this domain found either "marked" or "extreme" limitations. Drs. Parsons, Frank, and Killenberg found either "less than marked" or no limitations in this area. (R. at 194,[9] 200, 218) Plaintiff's third grade teacher completed the Functional Assessment form, (R. at 142-45), but declined to rate Dylan in each

---

[8] The Court makes no such determination.

[9] Dr. Parsons used the old language of "Personal," (R. at 194), noting that Dylan had "all of his own self-help skills ...," (id.).

11

domain, stating that "as a teacher, not a doctor or Special Educationally trained specialist I am not at liberty to make those decisions," (R. at 145). It is the ALJ's responsibility to resolve conflicts in the evidence, not the Court's. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are, assuredly, for the [Commissioner]--rather than the courts--to resolve.").

Moreover, in certain circumstances the ALJ is entitled to rely on the opinions of non-examining, reviewing physicians or psychologists. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988)("It is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]."); cf. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("The law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians."); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)(noting that the First Circuit "ha[s] repeatedly refused to adopt any per se rule to that effect"). "Such an advisory report is entitled to some evidentiary weight, which 'will vary with the circumstances, including the nature of the illness and the information provided the expert.'" Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 328 (1st Cir. 1990)(quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 223 (1st Cir. 1981)); see also Thompson v. Barnhart, Civil Action No. 05-11051-DPW, 2006 WL 2506035, at *3 (D. Mass. Aug. 28, 2006)("The First Circuit considers the following factors in determining whether a non-examining physician's opinion is entitled to evidentiary weight: whether the doctor's report contains substantial subsidiary findings; whether the majority of the evidence was available to the non-examining physician; whether the medical evidence was reviewed with care[;] and whether there was broad agreement reflected in the advisory opinions.")(citing DiVirgilio v. Apfel, 21 F.Supp.2d 76, 81 (D. Mass. 1998); SSR 96-6p, 1996 WL 374180 (S.S.A.), at *3 ("In appropriate circumstances,

12

opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). Here, the State agency consultants' reports contain substantial subsidiary findings, demonstrating that the medical evidence was, in fact, reviewed with care, and their opinions reflect broad agreement, finding "less than marked" limitations or no limitations in all six domains, (R. at 199-200, 216-18). The Court therefore concludes that the ALJ was entitled to rely on the reviewing experts' assessments.

Plaintiff additionally disputes the ALJ's statement that "the record does not show that the claimant's mental impairments will continue to be severe. It appears that the symptoms improved following the hospitalization," Plaintiff's Mem. at 18 (quoting R. at 21), contending that "[i]n so finding, the ALJ is obviously rendering a medical opinion as an untrained, lay person," Plaintiff's Mem. at 18-19. The Court disagrees. While Plaintiff argues that the objective evidence from Dr. Smith "continues to document Dylan's severe problems after his March 2004 hospitalization," id. at 19, there is also evidence in Dr. Smith's notes which supports the ALJ's conclusion, (R. at 238-46). Again, it is the ALJ's responsibility to resolve such conflicts in the evidence. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d at 141.

The Court has reviewed the entire record and concludes that the ALJ's finding of "less than 'marked' limitations," (R. at 19) in the domain of Attending and Completing Tasks is supported by substantial evidence. Accordingly, the Court concludes that remand for further consideration of Dylan's functioning in the domain of Attending and Completing Tasks is not warranted.

### Summary

I find that the ALJ did not commit legal error in declining to consult a medical advisor with regard to newly submitted evidence. I further find that the ALJ's determinations that Dylan had "less than 'marked' limitations," (R. at 19), in the domain of Attending and Completing Tasks and that his impairment(s) did not functionally equal

a listed impairment are supported by substantial evidence in the record.

## Conclusion

For the reasons stated above, I find that the ALJ's determination that Dylan is not disabled is supported by substantial evidence in the record and is legally correct.  Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Remand be denied.


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 30, 2007